Good morning, Your Honors. May it please the Court, I'm Gordon Woodley, Attorney for Appellant. I'm here seeking justice for Denise Woodley so that her Fifth Amendment, just compensation, is kept whole just as Congress intended. Two issues before the Court this morning. First, whether the claims court was wrong to retroactively nullify the URA's mandatory requirement that it was the government which is obligated to pay this landowner's URA litigation expenses, including attorney's fees. Let me ask you, sir, the government sites and the Court of Claims relied on the fact that the way we've construed other statutory provisions, similar statutory provisions on attorney's fees, would preclude the award of fees here to the pro se, at least to pro se plaintiffs. Do you concede that and just say there's something different about the URA so that those precedents with respect to other statute should not apply here, or do you just disagree with the conclusions drawn from the court cases on those other statutes? We disagree. First of all, Denise Woodley was never truly pro se. She was always represented in this case, and these are her attorney's fees that she incurred with Woodley law throughout this case from 2014 to the present. Well, just on that point, I don't want to interrupt your thought, but I mean there are various findings by the Court of Federal Claims and references to the record where the parties would describe themselves as pro se litigants. Yes. Right? Yes. Okay, but you're saying that was incorrect? No. I was technically a pro se litigant when, even though I was represented by class counsel, class counsel wasn't going to be writing the brief on appeal. Denise Woodley, whose claim this is for attorney's fees, she was always represented. First she was represented by class counsel, then she was represented by me starting in February of 2014, and then she was represented by the two of us, David Frederick of the Kellogg firm, and myself from February 5th of 2015. For most of this proceeding, if not all of it, she referred to herself as pro se, as a pro se litigant. We did not have the right, well, we did not have the right before the claims court to file any documents that class counsel did not approve or did not author. And so anything we write that would say Denise Woodley, represented by Gordon Woodley of Woodley Law, would be stricken. So that is why the original notice of appeal... We're not examining or reviewing the authority or the basis, the legitimacy of proceeding as pro se. What we're looking at, what we're reviewing is whether a pro se litigant is entitled to reasonable attorney's fees. And it seems to me that the Your Honor, it doesn't weigh heavily against Denise Woodley. She was represented throughout this case. And if you look to the case of the Rickley versus County of Los Angeles case from the Ninth Circuit, an attorney's spouse, those fees were recovered in a civil rights action. And it's even persuasive in this case. How can it be more persuasive where in that case the plaintiff was not the attorney representing, the spouse representing the plaintiff was not also a party in the case? So how can it be more persuasive than in this case? Well, because the statutes are different and the purposes of the statutes are different. In this case, the statute is to keep Denise Woodley whole in her just compensation. In the civil rights action, it is to obtain attorney's fees for a civil rights violation. And here we have Fifth Amendment just compensation. There is no Fifth Amendment just compensation in the civil rights arena. So why does that change? I mean, is there anything in the URA? I mean, are you just saying that the statutory provisions regarding attorney's fees are not apt because there's something different about a URA claim? So why would the difference between a URA claim and a civil rights claim dictate the policy that's driving the civil rights claims in terms of getting attorneys and so forth? Yes, the congressional policies behind the two statutes are different. And they're probably different in numerous respects, but how are they different in the way that affects the issue we're discussing here? There is no exception in the URA to disallow attorney's fees incurred with an attorney's spouse. Well, there's no exception in the civil rights cases either. It's one that's been construed by the court. No, but in the Rickley case that squarely looked at this issue... That's not what happened here. The denial of attorney's fees is not because you're the spouse of Ms. Ridley. And the issue is not whether attorney's fees are denied because the pro se litigant was represented by her spouse. You were part of the class section too, right? Yes. So you were a litigant within the class section. You were representing yourself. Not just Ms. Woodley. But I was representing Mrs. Woodley. And Mrs. Woodley wouldn't have been able to write the briefs to this court. She wouldn't have been able to write the motions for reconsideration. She wouldn't have been able to fight back against class counsel's attempts to tell this court that her appeal was frivolous in the first case. Can I just ask you, in what way, if any, is your interest distinguishable from Denise's interest, given the community property ownership of the land at issue? Well, there is no evidence in this case about the financial affairs of myself and Mrs. Woodley. A community property state, there's only a handful of states in the country that have them. But this is one. I understand. Undivided equal interests. And I thought that the last deed on this puts the whole thing into the ownership of the community so that your claim as an actual plaintiff is indistinguishable in this case from hers, which makes any fees that you are seeking identically for yourself as plaintiff as for her. I thought that was the heart of the problem that Judge Leto recognized here. That's why these fees are effectively for pro se, because a pro se plaintiff who is a lawyer doesn't get fees for serving the role of lawyer for himself. In the Schneider case versus Colegio Abrogados de Puerto Rico from the First Circuit, discussed in the Rickley case, there the attorney was representing himself as a party, and he was also representing another person in an attorney-client relationship, like we have here. But not for an indivisible, identical interest. That's what seems distinctive here, and among other things, what's distinctive about Rickley, where only one of the two spouses was actually a plaintiff, even though they may have had the same injury of retaliation from the county. Only one of them was suing for her share of the injury, but not the attorney's spouse. I understand you, Hunter, but I also understand that there was never a pro se exclusion under the URA until Judge Leto made it. And you don't change the rules of the game after the game has been played. There was no indication from this judge or from the government that Mrs. Woodley would not be entitled to recover her attorney's fees because she was married to her attorney's spouse, or because Mr. Woodley had an interest in the case as a party objector. But there was another reason that the Court of Federal Claims based this decision, and that's that the record is devoid of anything that shows an attorney-client relationship. With all due respect, Your Honor, that's not true. Not true at all. Yes, the fee agreement was given to the government. It was February 2014. Can you cite to the record for us to look at it? I will when I do my rebuttal, Your Honor. I would like to reserve the balance of my time for rebuttal. Thank you. May it please the Court. Brian Toth from the Department of Justice, representing the Government of California. It's undisputed, I think, that a pro se plaintiff cannot recover his own fees, his own time spent on his case is not compensable. That's not an issue. What about costs or litigation expenses? Are those recoverable by pro se litigant? Our position is that they're not. Under the URA, it's indistinguishable. The text refers to both expenses and attorney fees. I'm sorry, but the background rule from K absolutely distinguishes them, as does the underlying rationale. Obviously, there's not a large dollar amount of expenses here, but it's not trivial. I guess I do have a hard time seeing that the result ought to be the same for the out-of-pocket expenses and the fees here. I can only point the Court to the text. I understand your point about the rationale in K. It is a different statute. We're relying on it in our favor for fees. I'm pointing you back to the URA. I understand our position there. But I would submit that as to the specific expenses that have been identified here. That would require a remand. It would require a remand. Several of them, the cost of the appeal filing fee, costs were considered by this Court and were not awarded in the first appeal. The appraisal fee, we make the argument in our brief why it wasn't necessary. But Judge Leto didn't get to any of that. Judge Leto didn't get to that. That's correct. It is a very small amount that would be at issue on the remand. I did want to address opposing counsel's representation about the retainer agreement because I think it's not really clear. It may not be clear on the face of the filings what happened with that. An unsigned copy of that retainer agreement from February 2014 was provided to the United States during the proceedings in the trial court. The United States filed its appellate brief here. And then after we filed our appellate brief, the appendices were filed. And in the plaintiff's appendix, this is at page 260, is now a copy of the retainer agreement. It was never filed with the trial court. That retainer agreement is not signed by anybody. Precisely. It's got a slash on it in handwriting. If you could call that a signature, that could be debated. But it certainly wasn't filed in the trial court. And it's not part of the record on appeal. If you look at the table of contents for it. Would that make a difference? No. I don't think our position turns on the retainer agreement here. But I am just responding to that as a factual matter because there was some, I think, confusion in the record about that. Our position is that this court has approached attorney's fees with respect to pro se litigants in a categorical way. And for better or worse, with Kay, it announces a policy. It does, you know, Kay does talk about the text of the fee statute at issue there, which included the word attorney. And from that, the court says, well, it can be inferred that that implies a client relationship. Although the court went on to say there are some underlying policy considerations. And we think those policy considerations have been applied to other fee shifting statutes by this court. In NACL, the Equal Access to Justice Act, the fees for a pro se litigant were not available. And as well as in the Back Pay Act. We don't think the URA is meaningfully different from those other instances. Just to go back to what Judge Toronto and Judge Rayner had referred to earlier about the expenses portion of this. Do you agree that expenses sort of is in a different category than all of the policy issues that propelled the courts in the other attorney's fees cases to go the way they did? That may be, I don't have any ground to distinguish it on a policy matter. I mean, we could talk about, a little bit about the. Well, did you make that argument in your brief that there's no difference between expenses and attorney's fees? To the outcome here. I think we relied on reasonableness of the, saying that these expenses, denying the expenses was reasonable. Because they had not demonstrated that the expenses were reasonable. I understand that's not the ruling that Judge Leto made, but that's the ground on which we defended it. So, I mean, the purpose of the URA is to make plaintiffs whole when they bring these just compensation claims. Attorney's fees specifically are not a component of just compensation. The Supreme Court made that clear in Doheny. I'm not sure that that case dealt with expenses separately. Can I just ask, getting back to the facts here. Yes. I think I understand an argument to be that Mr. Woodley in doing legal work for himself was, of course, pro se. But in doing legal work for Mrs. Woodley, he was not. And he's entitled to his fees for the second. Why is that wrong? Because, as the claims court said in its opinion, essentially, he could not do work on behalf of Mrs. Woodley without also doing work on behalf of himself. There is no meaningful way to separate the work that advanced his own interest as a pro se plaintiff from the work he did to advance the interest of Mrs. Woodley. And that's because they jointly hold property interest here. This court has different ways to rule in the government's favor that preserve the opportunity of attorney spouses to represent their plaintiff spouse when they are not involved as a plaintiff in the case. But we think that here, being a plaintiff in the case and being a case where the subject was a jointly held property interest, there has been suggested no way to meaningfully divide the work that Mr. Woodley did. That's for purposes of attorney's fees, but that doesn't apply to costs, does it? I think that's correct. And then when you look at 4654C and it's talking about reasonable attorney's fees, it's referring to a plaintiff. There's nothing there that says that I can read that would prevent the Woodleys from recovering their costs from disbursements, expenses. Then it goes on and says including reasonable attorney, but we know that that doesn't apply. But I don't see a prohibition against recovering your court costs, for example. No, I don't have one to suggest. As to court costs, I mean, just on the facts of this case, as I mentioned, the only court cost he was seeking was for the file and field of the first appeal. And this court already awarded no costs in that respect. They may have photocopy costs. Don't they have an expert fee expense? There was an appraisal done, and our position was that that was not a reasonable expense, but certainly Judge Toronto suggested that's... Appraisals are mentioned right here in that statute that I just read. Right, I understand. I mean, it's also the reasonable costs and expenses, the reasonableness of the appraisal as an issue. Would it be error for this court to remand to the Court of Federal Claims to determine what reasonable costs, litigation expenses were incurred by the plaintiffs, by the Woodleys? No, I don't think it would be error. I mean, we think that the court could decide on this record that the costs and expenses that have been presented are, as a matter of law, not reasonable. But the court doesn't have to address that issue that way. It wouldn't be error for the court to remand, I don't think. And the appraisal fee is basically the rest of the other two expenses or change around the appraisal fee. They're fairly, yeah, they're fairly insignificant. I think I've addressed most of the points that I want to make. I'll mention, I suppose, the context of how the Woodleys proceeded in litigating their claims. I mean, we're not contending in any way that they weren't successful in their appeals or that Mr. Woodley was not competent. But certainly that didn't make a difference to the outcome in K where the petitioner there was found to have obviously discharged his professional responsibilities in a competent manner. So it's not an individual look at the quality or results of the attorney's work in the case. It's that there's a categorical rule and a categorical policy that the court has applied. So in no way do we mean to disparage Mr. Woodley's work on behalf of himself and his wife or the results that he achieved for himself or for the benefits to the class. And I just wanted to make that point unless the court has any further questions. Thank you. Judge Taranto, the letter of agreement in this matter for retaining services of Woodley law is found in Appendix 260. And to answer Judge Prost's inquiry, retainer agreement is not required for the recovery of attorney's fees under these fee-shifting statutes. It's required under the rules of professional responsibility. Absolutely. In order to find an attorney relationship and the letter you cite is not signed. This is a slash sign. She did sign the original. I couldn't put my hands on it, but I may have sent it to David, who is my co-counsel throughout this. Mr. Frederick. Mr. Frederick, thank you. I'm sorry. And they submitted it to the government because the government wanted to see it. That was fine with us. And Denise gave her consent to have the fee agreement that she signed sent to the government. It may have been that Mr. Frederick's office sent them the SS number that was signed. But it was never put in the record. It was never entered into the record in this case, right? It's possible it wasn't, Your Honor. Yes. The State of Washington does not prohibit pro se attorneys from collecting fees for representing themselves. And in Stiles v. Kearney, the Washington Supreme Court said that they would not extend the ruling of Kaye v. Earler to prohibit pro se attorney's fees because it simply didn't have application. It was Kaye. They felt that Kaye was restricted to its facts. And I agree. When we look at Washington law, when we look at the Ninth Circuit law represented by Rickley v. County of Los Angeles, and we look at Kaye on its very restricted fact pattern, simply Kaye is not to be extended to every fee-shifting situation, particularly not when the congressional policies are different, when the language of the statute allowing attorney's fees in this case was mandatory. The claims court shall award and the government shall pay. And seriously, what's most galling, I think, in this case, is after all this work is done, and after even Judge Letow recognizes that we're going to file separate fee applications because Mrs. Woodley was represented by two counsel in this case, not once during that time from 2014 to 2020, for six years, not once did anybody say, oh, you know, Mr. Woodley, you're not going to get your fees. If that was the case, then we would have bowed out and tried to find somebody else to represent Mrs. Woodley so she wouldn't be left in this case because she doesn't get reimbursed for her attorney's fees. That's just not fair. You don't change the rules of the game after the game has been played. You don't blindside counsel. You don't blindside Mrs. Woodley. She had the courage to stand up and come to this court in 2014, and this court overturned $33 million in unjust common fund fees that were being taken out by class counsel. It also overturned the original approval because class counsel hadn't given the proper information that was needed to evaluate whether or not to accept a settlement. To change the rules at the end of the game is fundamentally unfair. Judge Scalia, in the Kaiser Aluminum Chemical case, said it is unfair and non-retroactivity, which we're talking about here, perspective versus retroactive, non-retroactivity, which is perspective, is the basis of how we work as human beings. We all know after a game is played, it's unfair. We all know that, as just Scalia said in the Kaiser case, non-retroactivity has been the basis of law for the Greeks, the Romans, English common law, Napoleonic code, and it's a fundamental injustice to apply this new exception to the URA of no attorney's fees for an attorney's spouse who may have an interest in the case as well to the case after the case is basically concluded. It's just unfair. Okay, we're beyond time. Thank you, Your Honor. Thank you. We thank both sides in the case this evening.